# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
# SCRANTON DIVISION

|  |  |  |
|---|---|---|
| WILLIAM FRENCH and MELYNDA ANNE REESE | : | No. |
|  | : |  |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| COUNTY OF LUZERNE, LUZERNE COUNTY BOARD OF ELECTIONS AND REGISTRATION, and LUZERNE COUNTY BUREAU OF ELECTIONS. | : | |
|  | : |  |
| Defendants. | : |  |

## COMPLAINT

### INTRODUCTION

1.      "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). The right to vote is fundamental, precious, and sacred. *See, e.g., Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966). Voting is a "fundamental right" under the Fourteenth Amendment and it is a right protected by the First Amendment because it secures "opportunities of all voters to express their own political preferences." *Norman v. Reed*, 502 U.S. 279, 288 (1992).

2.      On November 8, 2022 (Election Day), "voters in Luzerne County through no fault of their own, were disenfranchised and denied the fundamental right to vote."

*See* Order dated November 8, 2022, *In Re: Extension of Time of Polls to Remain Open in the 2022 General Election,* Luzerne County Court of Common Pleas, No. 09970 of 2022 at Exhibit 1. Plaintiffs are two such voters.

3.     Administration of the 2022 General Election in Luzerne County was a catastrophic failure. On Election Day, voters, like plaintiffs, arrived at polling places to learn that polling places lacked paper ballots making it impossible for them to vote. Carter Walker, *This Pennsylvania County ran out of paper on Election Day. Now the district attorney is investigating*, spotlightpa.com, November 15, 2022, https://www.spotlightpa.org/news/2022/11/pa-election-2022-luzerne-county-paper-shortage-da-investigation/.

4.     As a result, voters, like plaintiffs, were unable to vote and their efforts to exercise their right to vote were severely burdened by defendants' misadministration of the election.

5.     The chaos on Election Day was entirely preventable and predictable. Defendants caused plaintiffs' right to vote to be violated because they failed to perform their most basic and obvious duties under the Pennsylvania Election Code, including their duties to properly equip and supply polling places, implement effective back-up procedures, and to train election workers.

6.     Under the Pennsylvania Election Code, defendants had an affirmative duty to adequately supply polling places with paper ballots and were required to supply each polling place with a number of paper ballots equal to the number of registered voters in the election district who could vote at the polling place. 25 P.S. §

2942(b); 25 P.S. § 2967(a)(8). The Pennsylvania Election Code also required that defendants maintain at the Board of Election offices a sufficient number "backup" paper ballots for polling places to use. 25 P.S. § 2967(b). Defendants failed to fulfill these well-established and obvious duties.

7.      The Pennsylvania Election Code also required defendants to instruct and train election workers so that the election could be conducted "honestly, efficiently, and uniformly." 25 P.S. § 2642(g). But defendants maintain no formal training for their election employees who administer elections. Indeed, the Board hired the acting director of elections, who had no training or experience administering elections, just three months before Election Day in 2022.

8.      Plaintiffs bring this action to vindicate the violation of their constitutional right to vote by defendants in the 2022 General Election and to prevent future violations of their right to vote by defendants. Plaintiffs do not seek to overturn the results of the 2022 General Election and do not seek a recount of the votes in that election.

## PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff, William French, is a qualified and registered voter in the Commonwealth of Pennsylvania who resides in Luzerne County. French is disabled and a veteran of the United States Army. French was a registered voter in Luzerne County in 2022 and was qualified to vote in Luzerne County in the 2022 General Election on November 8, 2022. French attempted to vote in the 2022 General Election

on November 8, 2022, but was denied the right to vote. French intends to vote in future elections in Luzerne County including the primary election on May 16, 2023.

10.     Plaintiff, Melynda Anne Reese, is a qualified and registered voter in the Commonwealth of Pennsylvania who resides in Luzerne County. Reese was a registered voter in Luzerne County in 2022 and was qualified to vote in Luzerne County in the 2022 General Election on November 8, 2022. Reese attempted to vote in the 2022 General Election on November 8, 2022, but was denied the right to vote. Reese intends to vote in future elections in Luzerne County including the primary election on May 16, 2023.

11.     Defendant County of Luzerne ("Luzerne County") is a county of the third class organized and existing under the laws of the Commonwealth of Pennsylvania.

12.     Defendant Luzerne County Board of Elections and Registration (the "Board") is a county board of elections organized under 25 P.S. § 2641 and the Luzerne County Home Rule Charter. The Board is responsible for administering elections in Luzerne County pursuant to the Pennsylvania Election Code and all federal, state, and local laws and regulations.

13.     Defendant Luzerne County Bureau of Elections (the "Bureau of Elections") is a bureau of Luzerne County tasked with carrying out the edicts, directives, orders, and decrees of the Board in administering elections in Luzerne County and managing the personnel requirements or requests of the Board.

14.     All defendants are persons who acted under color of state law to deprive plaintiffs of their constitutional rights.  42 U.S.C. § 1983; *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Ex parte Young*, 209 U.S. 123 (1908).

15.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

16.     Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

## BACKGROUND

### A. DEFENDANTS DENIED AND SEVERELY BURDENED PLAINTIFFS' RIGHT TO VOTE IN THE 2022 GENERAL ELECTION.

17.     While preparing for and during the 2022 General Election, Defendants failed to supply a significant number of polling places with the required amount of ballot paper and failed to properly train election workers, including their acting director on how to properly administer an election under federal, state, and local law.

18.     Upon information and belief, at least 40 polling places in Luzerne County did not have the amount of ballot paper required under the Pennsylvania Election Code.

19.     Without ballot paper, citizens could not vote.

20.     When polling places ran out of paper, election officials and workers were instructed to tell voters they could not vote and to come back later.  Those voters would return later only to be denied the right to vote again because the polling places still had no paper ballots.

21. The Election Day chaos in Luzerne County was widely reported. *See, e.g.*, Rebekah Castor, *Pennsylvania judge orders county to keep polls open until 10 pm after running out of ballot machine paper*, foxnews.com (November 8, 2022, 6:21 p.m., https://www.foxnews.com/politics/pennsylvania-judge-orders-county-keep-polls-open-until-10-running-out-ballot-machine-paper; *Luzerne County polls to stay open later due to voting issues,* cbsnews.com, https://www.cbsnews.com/philadel-phia/news/small-hitches-at-polling-places-in-pennsylvania-new-jersey/ (last visited February 20, 2022); John Krusel, *Judge extends voting hours in Luzerne County, Pennsylvania, after paper ballot shortage,* The Hill (November 8, 2022, 3:53 p.m.), https://thehill.com/homenews/campaign/3725562-judge-extends-voting-hours-in-lu-zerne-county-pennsylvania-after-paper-shortage/.

22. Indeed, some polling places ran out ballot paper as early as 8:00 a.m. on Election Day.

23. Worse, defendants had no plan in place to deal with the chaos and ca-lamity on Election Day because they maintained no training or other protocols to deal with the ballot shortage.

24. For example, when election administrators at local polling places con-tacted defendants for guidance on how to address the lack of ballots, defendants' staff hung up on them and offered them no assistance or guidance. Local officials at polling locations that had no ballots were left to decide on their own how to address the ca-tastrophe.

25.     Defendants were so ill prepared for the ballot shortage that defendants instructed election workers to purchase paper at office supply stores in a last-ditch effort to afford voters with the opportunity to vote.

26.     In other reported cases, common citizens delivered copy paper to polling places for use by election workers.

27.     At certain polling places, election officials and workers instructed qualified and registered voters, who were attempting to vote at their proper polling places, to vote using provisional ballots.

28.     A provisional ballot is used only when election officials cannot verify an individual's qualifications and right to vote. Unlike like a regular ballot, a provisional ballot is not immediately counted and must be adjudicated by the Board later a case-by-case basis.

29.     The disaster caused by defendants' inadequate preparation for the election reached a crescendo and at 1:03 p.m. on Election Day, *after* many voters had been turned away, defendants filed an Emergency Petition with the Luzerne County Court of Common Pleas to keep the polls open until 10:00 p.m., an extraordinary measure, because they knew voters, like plaintiffs, were being disenfranchised.

30.     In the Emergency Petition, defendants admitted that because of the ballot shortage "electors of Luzerne County may be deprived of their opportunity to participate because of circumstances beyond their control if the time for closing is not extended." *See* Emergency Petition of Luzerne County Bureau of Election and Luzerne County Board of Elections Requesting an Extension of Time for Polls to Remain

Open Unit 10:00 P.M. for the November 8, 2022 General Election, Luzerne County Court of Common Pleas, Case No. 09970-2022 at Ex. 2.

31.     The Court of Common Pleas granted the defendants' Emergency Petition finding that "[v]oters in Luzerne County through no fault of their own, *were* disenfranchised and *denied* the fundamental right to vote." *See* Ex. 1.

32.     Notwithstanding the fact that many voters, like plaintiffs, were denied the right to vote in the election, the Board, by a 3 to 2 vote, certified the results of the election.

33.     Defendants' decisions, edicts, decrees, and long-standing customs and policies with respect to the administration of elections generally and the 2022 General Election specifically caused voters in Luzerne County to be disenfranchised, denied voters their right to vote, or severely burdened their right to vote. Plaintiffs are two of those disenfranchised voters.

34.     On the morning of November 8, 2022 (Election Day), French went to his local polling place at the Freeland Ambulance Association, 417 Johnson Street, Freeland, PA 18224 to cast his vote in person.

35.     But, upon arrival at his polling place, election officials and workers employed by the defendants told French he could not vote because the polling place did not have ballots on which he could cast a vote.

36.     Election officials and poll workers employed by the defendants told French he was to come back later in the day to attempt to vote.

37.     As instructed, French returned to the same polling place at approximately 3:30 p.m. on election day.

38.     But, again, election officials and workers told French he could not vote because there were still no ballots available. Election officials and workers told French to come back again later to attempt to vote.

39.     However, French's disability left him unable to return yet again to attempt to exercise his right to vote. French's leg is destroyed and has been subjected to at least 17 surgeries. He uses a cane to help him walk. The sidewalks leading from French's home to his polling place are deteriorated and destroyed. Walking at night on these sidewalks created a risk of a fall and injury. So, French was not able to return to the polls to *attempt* to vote a third time.

40.     Reese is employed as a corrections officer.  Reese is also the primary care giver for her husband who, as of November 8, 2022, had recently suffered two cardiac arrests and a stroke.

41.     Due to his condition, Reese is not able to leave the house for extended periods of time when her husband will be unattended.

42.     On the morning of November 8, 2022, Reese went to her polling place located at 248 State Route 4012, Shickshinny, Pennsylvania 18655 with her husband.

43.     Upon arrival, election officials and workers informed Reese that only her husband could vote because the polling location had only a limited number of ballots remaining and that Reese would have to return later in the day to cast her vote.

44.     At 4:00 p.m., Reese returned to vote. When she returned, she was told there was still a waiting time. But her husband's physical condition made him unable to wait in the line for a long period of time.

45.     Reese again returned with her husband to cast her vote later in the day at approximately 6:30 p.m. Once again, however, Reese saw the length of the line was so long that she would not be able to wait with her husband for that long to vote.

46.     On November 8, 2022, at approximately 9:15 p.m., an election official employed by defendants called Reese and told her that ballots were finally available, and she could come to her polling place to vote.

47.     But Reese's husband had already taken his sleeping medication and it was impossible to leave the home with him at this time to attempt to vote a fourth time.

## B. DEFENDANTS DENIED AND SEVERELY BURDENED PLAINTIFFS' RIGHT TO VOTE THROUGH THEIR DECISIONS, ACTS, POLICIES, CUSTOMS, AND PRACTICES.

48.     Defendants' official edicts, actions, pronouncements, and long-standing and persistent customs and policies were the moving force behind, and caused, the violation of plaintiffs' constitutional right to vote.

49.     The Pennsylvania Election Code, 25 P.S. § 2500, *et seq.*, governs all elections that occur in Pennsylvania.

50.     The primary purpose of the Pennsylvania Election Code is to ensure the franchise and a fair and honest election. *Perles v. Hoffman*, 213 A.2d 781, 783–84 (Pa. 1965).

51.     The Pennsylvania Election Code and the Luzerne County Home Rule Charter vest the Board with final decision-making authority regarding the administration of elections in Luzerne County. 25 P.S. § 2641(a); Luzerne County Home Rule Charter § 8.04.

52.     The Board of Elections is a five-member board and it has final decision-making authority regarding elections in Luzerne County.

53.     The Board of Elections is responsible for creating, implementing, and enforcing policies, practices, and procedures to ensure that elections in Luzerne County are conducted according to federal and state election laws and to ensure that voters are not disenfranchised.

54.     Under the Pennsylvania Election Code, the Board is mandated to perform certain duties including:

      a.  selecting and properly equipping polling locations;

      b.  purchasing and maintaining election equipment of all kinds, including ballots and other supplies; and

      c.  instructing and training election officials so that primaries "may be honestly, efficiently, and uniformly conducted."

25 P.S. § 2642(b),(c), and (g).

55.     The Bureau of Elections' employees carry out, implement, and enforce the policies, practices, procedures, directives, and duties of the Board.

56.     The Board employs the director of elections.  The director of elections is responsible for all personnel and employees of the Bureau.

57.    The acting director of elections during the 2022 General Election was Beth Gilbert McBride.

58.    The director of elections is responsible for, among other things, planning, directing, coordinating, and controlling overall operations of the Bureau of Elections. The job duties of the director of elections include:

    a.   communicating election day activities;

    b.   preparing for and conducting primary, general, municipal, school district, and special elections;

    c.   monitoring, developing, and implementing national and state election legislation and legal decisions;

    d.   planning, directing, and controlling the preparation and conducting of elections in Luzerne County;

    e.   preparing ballots;

    f.   recruiting and training of election workers;

    g.   establishing department policies and procedures; and

    h.   maintaining an office manual.

59.    The director of elections maintains final decision-making authority within the Bureau of Elections.

60.    Under the Pennsylvania Election Code, defendants had an affirmative duty to adequately supply polling places with paper ballots and were required to supply each polling place with a number of paper ballots equal to the number of

registered voters in the election district who could vote at the polling place. 25 P.S. § 2942(b); 25 P.S. § 2967(a)(8).

61.     The Pennsylvania Election Code also required that defendants maintain at the Board of Election offices enough "backup" paper ballots for polling places to use. 25 P.S. § 2967(b).

62.     Defendants made affirmative directives, decisions, or decrees to order an insufficient number of ballots for at least 40 election districts.

63.     Defendants made affirmative directives, decisions, or decrees to order a different number of ballots for each election district.

64.     Defendants made affirmative directives, decisions, or decrees to order a number of ballots less than what was required under the Pennsylvania Election Code which caused the violation of plaintiffs' constitutional rights.

65.     Defendants' affirmative directives, decisions, or decrees to order an insufficient number of ballots for at least 40 election districts caused the violation of plaintiffs' constitutional right to vote.

66.     Defendants' affirmative directives, decisions, or decrees to order a different number of ballots for each election district caused the violation of plaintiffs' constitutional right to vote.

67.     Defendants' affirmative directives, decisions, or decrees established Defendants' official policy to order an insufficient number of ballots for at least 40 election districts, to order a different number of ballots for each election district, and to

order a number of ballots less than what was required under the Pennsylvania Election Code.

68.    Defendants' affirmative directives, decisions, or decrees reflected their deliberate choice *not* to order a sufficient number of ballots for at least 40 election districts, *not* to order the same number of ballots for each election district, and *not* to order the number of ballots required under the Pennsylvania Election Code.

69.    Defendants maintain additional policies and practices that are so widespread as to practically have the force of law.  Defendants' policies and practices are manifested not only in the affirmative actions and decisions they made regarding the number of ballots, but also in a number of decisions not to take certain actions necessary to administering a fair and effective election.

70.    For example, Defendants chose not to implement an adequate back-up plan to anticipate and timely dispatch additional ballots to election districts *before* they ran out of ballots as required by law.

71.    Additionally, defendants ignored warnings issued by the United States Election Assistance Commission (EAC) of looming ballot paper shortages that would likely impact the 2022 General Election.  The EAC warned all county election officials to plan ahead for potential ballot paper shortages and to communicate print needs to vendors as soon as possible. The EAC recommended that county election officials, like defendants, among other things, (a) designate "runners" to quickly deploy emergency supplies to polling locations and (b) deploy extra ballot paper to precincts.

72.    Defendants ignored the EAC's warnings and recommendations.

73.     Defendants chose not to adequately train their employees, including the director of elections, on the proper administration of elections and the Board's statutory duties under the Pennsylvania Election Code.

74.     Defendants had actual or constructive notice that the lack of training had or would violate citizens' constitutional right to vote.  It is obvious that adequate election administration requires effective plans and procedures for supplementing ballots and proper training of election administrators.

75.     Defendants' policy of inaction, considering the actual or constructive notice that it would cause constitutional violations, is the functional equivalent of a decision by the defendants' themselves.

76.     Defendants acted with deliberate indifference to the rights of plaintiffs.

77.     Considering the statutory duties and responsibilities of the Board and Bureau of Elections and their employees, the sacred nature of the right to vote, and warning from the EAC, the need for adequate procedures and training is so obvious that inadequate procedures and training are likely to result in a violation of the constitutional right to vote.

78.     Defendants maintain no formal training program for Bureau of Elections employees on the administration of elections or their duties and obligations under federal, state, or local law.

79.     Defendants also do not maintain a training manual or written guidance for the administration of elections by employees or their duties and obligations under federal, state, or local law.

80.     Defendants' failure to properly train their employees before the 2022 General Election, includes failing to train their acting director of elections, Beth Gilbert McBride.

81.     McBride became acting director only three months before the 2022 General Election.

82.     Before becoming acting director of elections, McBride had no prior experience administering elections or knowledge of applicable federal, state, and local election laws.

83.     Yet, upon information and belief, Defendants offered her no training before the 2022 General Election to fulfill her job duties.

84.     Since August 2020, the Bureau of Elections has hired three different deputy directors of elections.

85.     The director of elections before McBride left the job after only eight months.

86.     Upon information and belief, turnover within the Bureau of Elections has been high and employees of the Bureau of Elections have a median one year of experience.

87.     Defendants' inadequate personnel practices, choices of unqualified personnel, and lack of training protocols has caused elections to be maladministered and votes not to be counted before the 2022 General Election.

88.     During the 2020 General Election, an election worker threw out nine valid ballots, which, upon information and belief, were not counted.

89.     In the May 2021 primary, Republican ballots displayed on voting machine screens were labeled as Democrat ballots.

90.     In the November 2021 General Election, ballots contained printing errors.

91.     In the lead up to the 2022 General Election, defendants ignored the warning of the EAC about ballot paper shortages and failed to implement any of the recommended procedures to mitigate the harm a ballot shortage might cause.

92.     These prior circumstances demonstrate a pattern of similar constitutional violations such that defendants knew or should have known that their failure to properly train their employees and director of elections would have the consequence of violating plaintiffs' constitutionally protected right to vote.

93.     Still, even without these previous examples, the need to train election officials, including the director of elections, and election workers is obvious and the highly predictable consequence of not adequately training – or not training at all – is the disenfranchisement of voters.

94.     Defendants were deliberately indifferent to the rights of plaintiffs and others with whom defendants' employees came in contact.

95.     Defendants' inadequate and non-existing training caused plaintiffs' constitutional rights to be violated.

96.     Defendants' failure to train caused the Bureau of Elections to inadequately respond to ballot shortages when shortages occurred.

97.     In sum, Defendants violated the Plaintiffs' right to vote through the following policies and practices which had the effect of policy:

     a.   Supplying voting districts with an inadequate number of paper ballots;

     b.   Failing to implement back-up response procedures or implementing back-up response procedures that were wholly inadequate to respond to paper ballot shortages;

     c.   Hiring an unqualified director and failing to train the director; and

     d.   Failing to train other Bureau of Elections election workers.

98.     Additionally, to the extent that such policies were not the moving force causing plaintiffs' disenfranchisement, but rather unauthorized conduct by the defendants that caused the disenfranchisement, then the defendants are liable for such unauthorized conduct.

## CAUSES OF ACTION

### COUNT I
### Violation of the First and Fourteenth Amendments
### Right to Vote – Inadequate Supplies

99.     Plaintiffs incorporate the previous paragraphs by reference.

100.    "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

101.    The right to vote cannot be denied outright or where the government imposes substantial burdens on the right to vote. *See, Storer v. Brown*, 415 U.S. 724, 729-730 (1974); *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008).

102.    The right to vote is a fundamental right under the substantive Due Process Clause of the Fourteenth Amendment.

103.    The right to vote is a right to express one's political preferences in the democracy under the First Amendment.

104.    The right to vote cannot be subjected to arbitrary, capricious, or standardless treatment. *Bush v. Gore,* 531 U.S. 98 (2000).

105.    Further, under the *Anderson-Burdick* balancing test, "[a] court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).  This test employs a flexible, sliding scale that analyzes "severe" burdens on First and Fourteenth Amendment rights under "strict scrutiny," and lesser burdens under less exacting scrutiny.  *See Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 145 (3d Cir. 2022).

106. Defendants, acting under the color of state law, disenfranchised plaintiffs, severely burdened plaintiffs in exercising their right to vote, and violated their First and Fourteenth Amendment rights in the 2022 General Election.

107. Defendants violated plaintiffs' First and Fourteenth Amendment rights by denying them the right to vote and severely burdening their right to vote in the 2022 General Election.

108. Specifically, Defendants' official policy to order an insufficient number of ballots for at least 40 election districts, to order a different number of ballots for each election district, and to order a number of ballots less than what was required under the Pennsylvania Election Code, denied and severely burdened plaintiffs' right to vote.

109. Likewise, the Defendants' official policy was to implement no adequate procedure for anticipating ballot shortages and timely dispatching additional ballots in a manner that protected the franchise.

110. Defendants' wholly inadequate election administration policies subjected plaintiffs' access to the ballot to wholly arbitrary, capricious, and standardless treatment in violation of the substantive Due Process Clause of the Fourteenth Amendment.

111. Defendants cannot advance any state interest sufficient to justify their official policy of having on hand at each polling location an inadequate supply of balloting paper or in failing to implement adequate remedial or back-up plans and procedures.

112.   Plaintiffs are likely to be disenfranchised or their right to vote severely burdened in the future.

## COUNT II
### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
### FAILURE TO TRAIN

113.   Plaintiffs incorporate the previous paragraphs by reference.

114.   Defendants violated plaintiffs' fundamental right to vote, in violation of the First Amendment and substantive Due Process Clause of the Fourteenth Amendment, because of inadequate and non-existent training of election officials, including the unqualified and inexperienced director of elections, and poll workers.

115.   Defendants acted deliberately indifferent to the rights of plaintiffs.

116.   Defendants' inadequate and non-existent training of election officials, including the director of elections, and poll workers caused plaintiffs' constitutional rights to be violated.

117.   Defendants had constructive and actual notice of a pattern of similar constitutional violations from previous election cycles.

118.   Still, the need for training of election officials, including the election director, and election workers is obvious and a highly predictable consequence of not adequately – or not training at all – election officials and workers.

119.   Defendants' employment of an unqualified director of elections, high turnover of election officers, and failure to properly train election officials and workers subjected plaintiffs' access to the ballot to arbitrary, capricious, and standardless treatment and resulted in disenfranchisement.

120.    Further, Defendants cannot advance any state interest sufficient to justify their deliberate indifference to plaintiffs' constitutional rights and their failure to train election officials.

### COUNT III
### VIOLATION OF THE FOURTEENTH AMENDMENT
### EQUAL PROTECTION

121.    Plaintiffs incorporate the previous paragraphs by reference.

122.    The right to vote is a fundamental right subject to strict scrutiny under the Equal Protection Clause of the Fourteenth Amendment.

123.    The right to vote, including access to the ballot, cannot be subjected to arbitrary, capricious, or standardless treatment. *Bush,* 531 U.S. 98.

124.    Defendants violated plaintiffs' Fourteenth Amendment rights to equal protection of the law.

125.    The right to vote and to have one's vote counted cannot be made dependent on where the voter lives. *Reynolds,* 377 U.S. at 555 (holding that voters were denied due process based on unequal legislative districts.); *Bush,* 531 U.S. at 109 (Fourteenth Amendment assures that uniform, rational standards and procedures be used in a statewide recount of votes.); *Hunter v. Hamilton Cnty. Bd. of Elections,* 635 F.3d 219 (6th Cir. 2011) (holding that Fourteenth Amendment required uniform rules for counting of provisional ballots cast at wrong precinct).

126.    But, defendants, acting under color of state law, maintained an unequal system of voting that lacks uniform standards and processes, severely burdens and

denies equal access to the right to vote, and results in the arbitrary and disparate treatment of voters from election district to election district.

127.   Plaintiffs were disenfranchised and their right to vote severely burdened because they lived in locations where Defendants failed to supply the election districts with sufficient paper ballots, to implement adequate remedial plans, and to properly train election officials and workers.

128.   In the 2022 General Election, access to a functioning polling place with adequate ballots on which a vote could be cast was entirely dependent on where a voter lived.

129.   Some election districts had an adequate number of ballots but at least 40 election districts lacked enough ballots.

130.   Plaintiffs do not have equal access to the franchise or the right to have their votes counted equally.

131.   Plaintiffs' equal protection rights are likely to be violated in future elections.

### COUNT IV
### VIOLATION OF FOURTEENTH AMENDMENT
### PROCEDURAL DUE PROCESS

132.   Plaintiffs incorporate the previous paragraphs by reference.

133.   Defendants violated plaintiffs' rights under the procedural Due Process Clause of the Fourteenth Amendment by depriving plaintiffs of the right to vote without due process of law.

134.   Plaintiffs were denied the right to vote without any notice or predeprivation hearing. Rather, their rights were denied through no fault of their own.

135.   Plaintiffs were not provided an appeal process to challenge the denial of their right to vote.

136.   Plaintiffs' right to vote may be deprived without due process of law in the future.

137.   Defendants' official policies, inadequate election-day procedures, and lack of training subject plaintiffs and all others similarly situated to a great risk of an erroneous deprivation of their fundamental right vote.

138.   This risk could be remedied through additional procedural safeguards, such as procedures to ensure an adequate supply of balloting paper at each polling location, procedures for anticipating ballot shortages and timely dispatching additional ballots, procedures for tracking voters who are declined a ballot and ensuring that voters declined a ballot are afforded prompt remedial ballot access, and training for election officials.

139.   Such procedures would impose at most *de minimus* administrative burdens on defendants, and indeed, are actions that defendants should have already been taking to prevent deprivation of voters' constitutional rights.

### DEMAND FOR RELIEF

Plaintiffs respectfully request that the court:

    a.   enter a declaratory judgment that the defendants violated plaintiffs' First and Fourteenth Amendment rights in the 2022 General Election;

   b.  enter a declaratory judgment that defendants' administration of elections in Luzerne County violates the First and Fourteenth Amendments;

   c.  enter a preliminary and permanent injunction that prevents defendants from denying or severely burdening plaintiffs' constitutionally protected right to vote;

   d.  preliminary and permanently enjoin defendants before the next general election:

     1. to promulgate, adopt, and enforce uniform standards and processes to ensure that every election district is adequately supplied and equipped with a number of ballots as required under the Pennsylvania Election Code, emergency ballots, provisional ballots, and functioning voting machines;

     2. to promulgate, adopt, and enforce uniform standards and processes to ensure that every registered and qualified voter in an election district is able to vote without unreasonable delay or hardship on election day;

     3. to promulgate, adopt, and enforce a uniform and comprehensive program to recruit and train employees, including election officials and election day workers (poll workers) before each election to ensure that the election is properly staffed and administered and conducted according to federal and state law; and

4. to promulgate, adopt, and enforce a uniform and comprehensive program to ensure elections in Luzerne County are free, fair, and equal.

e. award plaintiffs nominal damages;

f. award costs and attorneys' fees under 42 U.S.C. § 1988; and

g. award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted,

Dated:  March 28, 2023

*/s/ Walter S. Zimolong III*
WALTER S. ZIMOLONG III, ESQUIRE
wally@zimolonglaw.com
JAMES J. FITZPATRICK III, ESQUIRE
james@zimolonglaw.com
Zimolong, LLC
PO Box 552
Villanova, PA 19085-0552
Tele: 215-665-0842