# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM FRENCH and** | : | |
| **MELYNDA ANNE REESE,** | : | |
| | : | **Civil No.: 3:23-cv-00538** |
| **Plaintiffs,** | : | |
| | : | **(Judge Mannion)** |
| **v.** | : | |
| | : | |
| **COUNTY OF LUZERNE,** | : | |
| **LUZERNE COUNTY BOARD** | : | |
| **OF ELECTIONS and** | : | |
| **REGISTRATION, and** | : | |
| **LUZERNE COUNTY BUREAU** | : | |
| **OF ELECTIONS,** | : | |
| | : | |
| **Defendants.** | : | |


# DEFENDANTS' BRIEF IN SUPPORT OF
# MOTION TO DISMISS COMPLAINT PURSUANT TO
# <u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

# TABLE OF CONTENTS

I.   BACKGROUND ...............................................................................................1

  A.  Procedural Background ..................................................................................1

  B.  Factual Background.........................................................................................2

II.  QUESTION PRESENTED.................................................................................4

III.  ARGUMENT.....................................................................................................4

  A.  Motion to Dismiss Standard. ..........................................................................4

  B.  Plaintiffs' Complaint Should Be Dismissed For Failure To State A Claim
  Upon Which Relief Can Be Granted. ...................................................................5

    1.  Plaintiffs' First And Fourteenth Amendment Claims Due To Inadequate
    Supplies Must Be Dismissed. .............................................................................5

    2.  Plaintiffs' First And Fourteenth Amendment Claims Due To A Failure To
    Train Must Be Dismissed. ..................................................................................9

    3.  Plaintiffs' Fourteenth Amendment Equal Protection Claims Must Be
    Dismissed...........................................................................................................14

    4.  Plaintiffs' Fourteenth Amendment Procedural Due Process Claims Must
    Be Dismissed. ....................................................................................................16

IV.  CONCLUSION ...............................................................................................18

# TABLE OF AUTHORITIES

## CASES

Acosta v. Democratic City Comm.,
    288 F. Supp. 3d 597 (E.D. Pa. 2018)……………………………………..16

Ashcroft v. Iqbal,
    55 U.S. 662, 179 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)…………….4-5, 8, 13

Carter v. City of Phila.,
    181 F.3d 339, 357 (3d Cir. 1999)…………………………………………..11

City of Canton v. Harris,
    489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)…………………10

Colburn v. Upper Darby Township,
    946 F.2d 1017, 1028 (3d Cir. 1991)………………………………………...10

Connick v. Thompson,
    563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)…………………….7

Donald J. Trump for President, Inc. v. Boockvar,
    493 F. Supp. 3d 331 (W.D. Pa. 2020)……………………………………….15

Grayson v. Dewitt,
    2016 U.S. Dist. LEXIS 138189 *11-12 (M.D. 2016)………………………10

Hennings v. Grafton,
    523 F.2d 861 (7th Cir. 1975)…………………………………………….16-17

Monell v. New York City Dept. of Social Servs.,
    436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)………………7, 11, 13

Oklahoma City v. Tuttle,
    471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).........................11, 13

Powell v. Power,
    436 F.2d 84 (2d Cir. 1970)…………………………………………………..16

Reitz v. County of Bucks,
    125 F.3d 139, 145 (3d Cir. 1997)…………………………………………...10

Shipley v. Chicago Bd. of Election Commissioners,
    947 F.3d 1056 (7th Cir. 2020)……………………………………………....15

Woooszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005)……………..10

## STATUTES

42 U.S. Code § 1983……………………………………………………1, 7, 10, 13, 16

## OTHER AUTHORITIES

Press Release of U.S. Attorney's Office for the Middle District of Pennsylvania,
    January 15, 2021 (https://www.justice.gov/usao-mdpa/pr/investigation-
    concluded-luzerne-county-ballot-case).......................................................12

*Times Leader*, "'Dude in Forty Fort' Pleads Guilty to Absentee Ballot Violation,"
    August 16, 2021 (https://www.timesleader.com/news/1507381/dude-in-
    forty-fort-pleads-guilty-to-absentee-ballot-violation). ……………………….12

## RULES

Fed. R. Civ. P. 8(a)(2)………………………………………………………...4, 5

## CONSTITUTIONAL PROVISIONS

First Amendment……………………………………………………………1, 5, 9

Fourteenth Amendment…………………………………………....1, 2, 5, 9, 14

Defendants Luzerne County ("County"), Luzerne County Board of Elections ("Board"), and Luzerne County Bureau of Elections ("Bureau")(collectively, "Defendants"), by and through their counsel, hereby file their brief in support of their motion to dismiss the complaint of Plaintiffs William French ("Mr. French") and Melynda Anne Reese ("Ms. Reese") (collectively "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.   **BACKGROUND**

### A.   **Procedural Background**

On March 28, 2023, Plaintiffs filed a civil rights action against Defendants alleging multiple violations of the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.   (See Doc. 1, generally). In their Complaint, Plaintiffs assert that their right to vote was infringed and denied during the general election held on November 8, 2022. (See Doc. 1 at Counts I-IV). Specifically, Count I of Plaintiffs' Complaint alleges that a paper shortage in certain polling locations denied Plaintiffs their right to vote in violation of the First and Fourteenth Amendments. (Id. at ¶ 108).   Count II of Plaintiffs' Complaint alleges that Defendants failed to adequately train election staff and poll workers, which in turn disenfranchised Plaintiffs in violation of their First and Fourteenth Amendment rights. (Id. at ¶ 114). Count III of Plaintiffs' Complaint alleges that Defendants

violated the Equal Protection Clause of the Fourteenth Amendment by maintaining "an unequal system of voting that lacks uniform standards and processes, severely burdens and denies equal access to the right to vote, and results in the arbitrary and disparate treatment of voters from election district to election district." (Id. at ¶ 126; also ¶¶ 127-130). Finally, Count IV of Plaintiffs' Complaint alleges that Defendants deprived Plaintiffs of their right to vote without due process of law in violation of the Fourteenth Amendment. (Id. at ¶ 133).

## B.    **Factual Background**

According to the Complaint, both Plaintiffs are registered voters and residents of the County. (Id. at ¶¶ 9-10). Mr. French is a disabled veteran and Ms. Reese is employed as a corrections officer. (Id. at ¶¶ 9, 40). Mr. French's local polling place is in the Borough of Freeland and Ms. Reese's local polling place is in the Borough of Shickshinny – both of which are located within Luzerne County. (Id. at ¶¶ 34, 42). Mr. French allegedly attempted to vote on two occasions during the general election held on November 8, 2022, but he claims that he was instructed twice to leave the polling place and come back later because his polling place did not have ballots. (Id. at ¶¶ 35-38). Mr. French then asserts that he could not return a third time because "his leg is destroyed and has been subjected to at least 17 surgeries." (Id. at ¶ 39). According to the Complaint, Mr. French could not walk back to his polling

place for a third time that day and risk injuring himself walking on the uneven pavement at night, so he did not return to the polls. (Id.)

In the Complaint, Ms. Reese asserts that she first attempted to vote on the morning of November 8, 2022. (Id. at ¶ 42). Ms. Reese claims, without elaboration, that "election officials and workers" told her that "only her husband could vote because the polling location had only a limited number of ballots remaining." (Id. at ¶ 43). It is unclear whether the polling location ran out of paper or if Ms. Reese is alleging that poll workers were randomly triaging the alleged limited number of paper remaining when Ms. Reese was at the polling location. (Id.) Ms. Reese alleges that she returned to the polling location to vote on two separate occasions – at 4:00 p.m. and 6:30 p.m. – and she left without voting because of long lines. (Id. at ¶¶ 44-45). According to Ms. Reese, she is the primary caregiver for her husband who had recently suffered multiple heart attacks and a stroke. (Id. at ¶ 40). When she returned to vote late in the afternoon and early evening, her husband accompanied her because she could not leave him alone unattended. (Id. at ¶ 41). However, her husband also could not wait with her in a long line at the polling place. (Id. at ¶¶ 44-45). In the Complaint, Ms. Reese never clearly pleads that the alleged long lines she encountered at 4:00 p.m. and 6:30 p.m. were because the polling location had run out of paper. (Id.) Regardless, she does allege that she received a phone call at 9:15 p.m. from an unidentified "election official" informing her that "ballots were finally

3

available" – just 45 minutes before the extended voting hours were set to expire. (Id. at ¶ 46). According to the Complaint, Ms. Reese could not leave her husband unattended – who was asleep – in order to go vote. (Id. at ¶ 47).

While acknowledging that some voters were advised that they could vote by provisional ballot (See Id. at ¶¶ 27-28), Plaintiffs' Complaint does not state whether or not they were ever offered to vote by provisional or emergency ballot or if so, whether or not they declined to vote by provisional or emergency ballot. (Id. generally).

## II. QUESTION PRESENTED

1.   Should Plaintiffs' Complaint Be Dismissed For Failure To State A Claim Upon Which Relief Could Be Granted?

    Suggested Answer:        Yes.

## III. ARGUMENT

### A.   Motion to Dismiss Standard.

A complaint must be dismissed if it clearly contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P.

8(a)(2)). This "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**B. Plaintiffs' Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.**

Defendants do not deny the obvious. While a paper shortage at various polling locations disrupted administration of the November 8, 2022 general election and necessitated the County and both major political parties to petition the Luzerne County Court of Common Pleas to extend voting hours until 10:00 p.m. on November 8, 2022, nevertheless, Plaintiffs' Complaint fails to state any claims upon which relief may be granted. Accordingly, each of its four (4) counts alleging violations of the First and Fourteenth Amendments to the United States Constitution including violations of the Equal Protection and Due Process Clauses must be dismissed.

**1. Plaintiffs' First And Fourteenth Amendment Claims Due To Inadequate Supplies Must Be Dismissed.**

In Count I, Plaintiffs allege that Defendants infringed upon and deprived them of their right to vote by failing to provide an adequate supply of paper for all of the County's electronic voting machines during the November 8, 2022 general election. Again, Defendants do not deny that paper shortages disrupted last November's general election; however, the County acted promptly to address the issue including, but not limited to, petitioning the Luzerne County Court of Common Pleas to extend

voting hours until 10:00 p.m. in <u>all</u> voting precincts, ordering additional paper supply, arranging delivery of the additional paper supply to individual polling precincts, consulting with the Pennsylvania Department of State, and advising voters to vote by provisional ballot.

As Plaintiffs' allegations make clear, they were not outright denied the right to vote. Indeed, Ms. Reese claims that she returned to her polling location at 4:00 p.m. and 6:30 p.m., but she could not wait in the long lines that had formed. She does not specifically allege that the long lines were caused by the ballot paper shortage, and long lines at a polling location are not an uncommon occurrence on any Election Day, let alone November 8, 2022. Furthermore, the Complaint does not state whether Ms. Reese was offered the opportunity to vote by provisional or emergency ballot and whether or not she declined to do so when she arrived at her polling place in the morning with her husband. Voting provisionally was a remedial measure implemented by the County while it addressed the paper shortage.

Mr. French, a disabled veteran, attempted to vote on two separate occasions on November 8; however, according to the Complaint, he was turned away twice because his Freeland Borough polling place allegedly did not have any paper. Again, the Complaint is silent as to whether or not he was offered an opportunity to vote provisionally but declined to do so. Unlike Ms. Reese, Mr. French did not claim that long lines prevented him from voting, but that his physical health prevented him

from safely making the journey from his house to his polling place, for a third time, at night.

For purposes of the pending motion to dismiss and accepting Plaintiffs' allegations as true, Defendants sympathize with any voter who has to make a difficult choice between caring for an ill spouse or risking personal injury and exercising their sacred right to vote; however, the fact remains that Plaintiffs have failed to offer anything more than "threadbare recitals of the elements of a cause of action" and "mere conclusory statements" in support of its claims against Defendants.

First, "local governments are responsible only for their own illegal acts." Connick v. Thompson, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)(internal citation omitted). Governments cannot be held "vicariously liable under § 1983 for their employees' actions." Id. Instead, a local government may only be liable if "action pursuant to official municipal policy" deprived an individual of a constitutional right. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

The paper supply issue was a fluke occurrence that has never happened before in Luzerne County. Contrary to Plaintiffs' assertion that "Defendants [had] an official policy to order an insufficient number of ballots for at least 40 election districts, to order a different number of ballots for each election district, and to order

a number of ballots less than what was required under the Pennsylvania Election Code," there are simply no well-pleaded allegations in the Complaint – aside from this conclusory statement – to support such a sweeping characterization that such a deliberate, official governmental policy existed in Luzerne County. (See Doc. 1 at ¶ 108). The Complaint infers but does not "show," Iqbal, 556 U.S. at 679, that the paper shortage could have only occurred due to a County policy and/or custom and because the shortage did occur, Plaintiffs contend that Mr. French and Ms. Reese were intentionally deprived of their right to vote. Such a "threadbare" and conclusory argument is exactly the type that Iqbal commands dismissal.

Second, the Complaint fundamentally mischaracterizes the issue on November 8 of 2022. At multiple points, Plaintiffs claim that Defendants did not order a sufficient number of *ballots*. (See Doc. 1 at ¶¶ 68-70, 96-97, 109, 127-128) (emphasis added). However, in the general election of November of 2022, Luzerne County utilized electronic ballot selection devices. After the voter reviewed and finalized their selections, the electronic device would print out the voter's preferences on an encoded piece of paper that the voter would feed into a separate tabulator. Once passed through the tabulator, the vote has been cast. Consequently, the issue on November 8 was a general paper supply issue and not, as Plaintiffs infer, an individual balloting problem where Defendants deliberately ordered an insufficient amount of ballots for targeted voting precincts in Luzerne County. The

electronic voting machines were uploaded with correct ballots across Luzerne County; however, as supply dwindled in several polling locations, these voting precincts had to resort to provisional balloting because the electronic machines could not be utilized without proper paper for the printers that could be reliably scanned by the tabulators. While this paper shortfall did not affect all voting precincts, it is incorrect to presume—as the Complaint does—that the limited paper shortage stemmed from a policy or custom or deliberate action of any County official, poll worker, or volunteer to disenfranchise individual voters in select polling locations, such as Plaintiffs.

### 2. Plaintiffs' First And Fourteenth Amendment Claims Due To A Failure To Train Must Be Dismissed.

In Count II, Plaintiffs allege that their right to vote was infringed upon and denied by Defendants' "inadequate and non-existent training of election officials, including the unqualified and inexperienced director of elections, and poll workers." (Doc. 1, ¶ 114).

First, the Board does not hire Luzerne County's Director of Elections and it has no authority to train, supervise, or discipline the Director of Elections or any Bureau of Elections personnel, pursuant to Luzerne County's Home Rule Charter (the "Charter"). Accordingly, the Board cannot be liable for allegedly failing to do what it is legally precluded from doing by the Charter. Likewise, the Bureau is a department within the County government and not a separate legal entity.

Accordingly, a § 1983 suit against both the County and the Bureau is a suit against the County itself as the only properly named defendant. Therefore, any independent claims against the Bureau should be dismissed.

Now, turning to the merits of Plaintiffs' "failure to train" theory of <u>Monell</u> liability, "an institutional defendant may … be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality." <u>Grayson v. Dewitt</u>, 2016 U.S. Dist. LEXIS 138189 *11-12 (M.D. Pa. 2016). Moreover, "failure-to-train claims…must meet <u>precise and demanding</u> legal criteria." <u>Colburn v. Upper Darby Township</u>, 946 F.2d 1017, 1028 (3d Cir. 1991) (<u>citing</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L. Ed. 2d 412 (1989))(emphasis added). § 1983 liability for failure-to-train claims are "especially difficult," <u>Grayson</u>, *supra*, and a plaintiff must establish that "the failure to train amounts to deliberate indifference to the rights of persons with whom [a municipal employee] come[s] into contact." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997) (citation and internal quotation marks omitted). In addition, the failure-to-train "must be closely related to the ultimate constitutional injury." <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 325 (3d Cir. 2005) (internal citations omitted). Indeed, "not all failures or lapses in training will support liability under § 1983." <u>Id.</u>

Deliberate indifference is proven where "(1)...lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (emphasis added). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," such that "policymakers are on actual or constructive notice that a particular omission in their training program causes...employees to violate citizens' constitutional rights." Oklahoma City v. Tuttle, 471 U.S. 808, 822-23, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). In fact, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Id. at 824.

In their Complaint, Plaintiffs attempt to bootstrap election-related issues from prior election cycles to attempt to establish a pattern or practice that does not even rise to the level of a policy or custom of the County. Furthermore, these prior election-related issues are different in both kind and degree to the paper shortage issue in the November 8, 2022 general election. (Doc. 1 at ¶¶ 88-91). In the 2020 presidential election, nine mail-in ballots were inadvertently discarded by a

temporary worker, who was immediately fired, while the ballots were later recovered. A subsequent investigation resulted in no criminal charges. See Press Release of U.S. Attorney's Office for the Middle District of Pennsylvania, January 15, 2021 (https://www.justice.gov/usao-mdpa/pr/investigation-concluded-luzerne-county-ballot-case). In the Primary Election held in May of 2021, due to a coding error on the electronic voting machines, Republican primary ballots were mislabeled as "Democratic" ballots; however, all Republican incumbent office holders and candidates were correctly listed on the ballot.

Curiously, while quick to cite the Bureau's recent failings, the Complaint omits an instance where the Bureau did everything right. Also in 2020, the Bureau "flagged" a fraudulent absentee ballot application, notified law enforcement, and the resulting criminal investigation ended in a criminal conviction for a registered voter who forged his deceased mother's name on the application. See *Times Leader,* "'Dude in Forty Fort' Pleads Guilty To Absentee Ballot Violation," August 16, 2021 (https://www.timesleader.com/news/1507381/dude-in-forty-fort-pleads-guilty-to-absentee-ballot-violation).

In none of these prior election cycles did polling locations experience paper shortages that required voting hours to be extended and other remedial measures taken such as the casting of provisional ballots until polling locations could be restocked. Accordingly, Plaintiffs cannot rely upon election-related issues from

2020 and 2021 to establish § 1983 *Monell* liability for failure-to-train that allegedly would have prevented the events of November 8, 2022. Plaintiffs, therefore, are left with one incident. No matter how avoidable in hindsight last November's paper-shortage turns out to be or how significant and regrettable the loss of any one vote admittedly is, this past election nevertheless remains one incident. Even if one assumes *arguendo* that the paper ballot shortage is a constitutional violation, this "single incident" does not constitute liability under § 1983. <u>Tuttle</u>, 471 U.S. at 824.

Plaintiffs have not alleged sufficient, plausible facts that connect a failure-to-train liability theory to their alleged constitutional injury, which is that inadequate supplies deprived them of the right-to-vote. Mere conclusory allegations that the then acting Elections Director was "unqualified" and that high turnover within the Bureau must have caused the paper-shortage is not sufficient under the <u>Iqbal</u> standard. Plaintiffs appear to state that the paper-shortage could not have occurred but for deliberate indifference and therefore, it must have been deliberate indifference. Unfortunately, such a *res ipsa loquiter* argument does not plausibly plead a viable § 1983 claim for failure-to-train. Since Plaintiffs rely upon a "single incident" – *i.e.* the November 8, 2022 general election – to prove their failure-to-train claim against Defendants, which is insufficient as a matter of law, any amendment would be futile and it should be dismissed with prejudice.

### 3. Plaintiffs' Fourteenth Amendment Equal Protection Claims Must Be Dismissed.

The Fourteenth Amendment to the United States Constitution states, in relevant part to Count III of the Complaint, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." In Count III, Plaintiffs do not challenge any state law or regulation or any policy or procedure of the County, the Bureau, and/or the Board. (Doc. 1 at ¶¶ 121-131). They claim, but do not plausibly plead, that Defendants have a policy or custom in place to deprive certain polling locations within the County of adequate paper supply to support the electronic voting machines in use in November of 2022. Instead, Plaintiffs rehash their same argument that the paper supply shortage in November of 2022 denied them equal protection of the law based upon where they lived. (Id. at ¶ 128). Plaintiffs do not allege that they were denied equal protection of the laws based upon race, religion, sex, gender, sexual orientation, or even political affiliation – merely geography. They also baldly assert that they do not "have equal access to the franchise" or the "right to have their votes counted equally," (Id. at ¶ 130), when elsewhere in the Complaint they plead that they are duly registered voters in Luzerne County. (Id. at ¶¶ 9 and 10). The paper shortage that occurred in November of 2022 was a freak occurrence that will not be repeated. No allegation within the Complaint plausibly argues that Plaintiffs' right and ability to vote will be infringed or denied in the future.

Plaintiffs allege that Defendants violated several provisions of the Pennsylvania Election Code during the November 8, 2022 general election. <u>See</u> (Doc. 1 at ¶¶ 60-68). However, even if true, violations of state election law "do not give rise to federal constitutional claims except in unusual circumstances." <u>See</u> <u>Donald J. Trump for President, Inc. v. Boockvar</u>, 493 F. Supp. 3d 331, 391 (W.D. Pa. 2020) (<u>citing</u> <u>Shipley v. Chicago Bd. of Election Commissioners</u>¸ 947 F.3d 1056, 1062 (7th Cir. 2020)).

Furthermore, Defendants have not adopted a policy or custom that dilutes votes, results in the arbitrary or capricious treatment of similarly situated voters, or maintained an unequal system of voting that lacks uniform standards and processes. As demonstrated on November 8, 2022, the paper shortage affected the entire County. Moreover, the County – and the two major political parties – petitioned the Luzerne County Court of Common Pleas to extend voting hours until 10:00 p.m. in <u>all</u> Luzerne County voting precincts, not just a select few. <u>See</u> <u>Donald J. Trump for President</u>, 493 F. Supp. 3d at 388 (holding that counties adopting different procedures for the use of drop boxes statewide is not "the sort of differential treatment . . . burden[ing] a fundamental right that forms the bedrock of equal protection"). Most importantly, Plaintiffs fail to acknowledge that they were not the only two voters within their respective polling precincts and as such, all eligible voters within those precincts would have been <u>equally</u> affected by the paper

shortages, not solely Plaintiffs. Indeed, Ms. Reese states that long lines of voters kept her from voting at 4:00 p.m. and 6:30 p.m.

Accepting as true the allegations of the Complaint for purposes of the present motion, it is regrettable that Plaintiffs did not vote in the November 8, 2022 election; however, as the Complaint details, there were other factors at play in this outcome including long lines at polling precincts, personal health and well-being, and obligations to an ailing spouse. None of these factual allegations excuse the avoidable and unnecessary paper shortage that disrupted the November 8 election, although it does undermine Plaintiffs' claims for constitutional relief.

### 4. Plaintiffs' Fourteenth Amendment Procedural Due Process Claims Must Be Dismissed.

Finally, Plaintiffs have not pled a valid procedural due process claim because the Due Process Clause does not "guarantee against errors in the administration of the election." Acosta v. Democratic City Comm., 288 F. Supp. 3d 597, 644 (E.D. Pa. 2018) (citing Powell v. Power, 436 F.2d 84, 88 (2d Cir. 1970)). Likewise, elections should be free of "purposeful tampering" but not "free of error." Id. In Hennings v. Grafton, 523 F.2d 861, 863 (7th Cir. 1975), the court held that § 1983 and the due process clause are not implicated where "[v]oters alleged that mechanical difficulties with voting machines occurred, votes were not recorded properly, and election officials failed to provide substitute paper ballots." Acosta, 436 F.2d at 90 (emphasis added) (citing Hennings, supra). The Hennings

court elaborated that "irregularities caused by mechanical or human errors and lacking in invidious or fraudulent intent" do not rise to the level of constitutional violations. Id. at 91.

Here, no election officials, employees, poll workers, or volunteers engaged in purposeful or fraudulent conduct to prevent Plaintiffs from voting on November 8, 2022. Furthermore, the irregularity of a widespread paper shortage was caused by human error and not "invidious or fraudulent intent." Id. Accordingly, Plaintiffs due process claim must be dismissed.

All citizens, including Plaintiffs, should be able to vote in an election free of error; however, errors do occur, and Defendants make no excuses for the errors that interfered with last November's general election. Nevertheless, Plaintiffs are not entitled to constitutional relief merely because errors were made.

## IV.  CONCLUSION

For any or all of the foregoing reasons, Defendants respectfully request that

Plaintiffs' Complaint be dismissed in its entirety.

Respectfully submitted,

s/ *Drew P. McLaughlin*

Drew P. McLaughlin, I.D. No. 324430
Kristyn Giarratano Jeckell, I.D. No. 327284
Keighlyn J. Oliver, I.D. No. 330372
**ELLIOTT GREENLEAF, P.C.**
15 Public Square, Suite 210
Wilkes-Barre, PA 18701
(570) 371-5290
*Attorneys for Defendants*

DATED:  May 16, 2023

## WORD COUNT CERTIFICATION

In accordance with Local Rule 7.8, undersigned counsel for Defendants Luzerne County, Luzerne County Board of Elections and Registration and Luzerne County Bureau of Elections, hereby certify that the foregoing brief in support of motion to dismiss contains less than 5,000 words. Specifically, relying upon the word count feature of the word processing system, the foregoing brief contains 3,988 words.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM FRENCH and<br>MELYNDA ANNE REESE, | : | |
| | : | Civil No.: 3:23-cv-00538 |
| Plaintiffs, | : | |
| | : | (Judge Mannion) |
| v. | : | |
| | : | |
| COUNTY OF LUZERNE,<br>LUZERNE COUNTY BOARD<br>OF ELECTIONS and<br>REGISTRATION, and<br>LUZERNE COUNTY BUREAU<br>OF ELECTIONS, | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Drew P. McLaughlin, hereby certify that I have caused to be served on this 16th day of May, 2023, a true and correct copy of Defendants' Luzerne County, Luzerne County Board of Elections, and Luzerne County Bureau of Elections brief in support of motion to dismiss the complaint on all counsel of record via ECF filing as follows:

Walter S. Zimolong, III
Zimolong, LLC
PO Box 552
Villanova, PA 19085-0552

s/ *Drew P. McLaughlin*
Drew P. McLaughlin

Date:  May 16, 2023