**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM FRENCH and MELYNDA ANNE REESE,** | : | **CIVIL ACTION NO. 3:23-538** |
| | : | **(JUDGE MANNION)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF LUZERNE, LUZERNE COUNTY BOARD OF ELECTIONS and REGISTRATION, and LUZERNE COUNTY BUREAU OF ELECTIONS,** | : | |
| | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

"[V]oters in Luzerne County through no fault of their own, were disenfranchised and denied the fundamental right to vote."[1] Those are the exact words used by the Luzerne County Court of Common Pleas when describing the county's now infamous 2022 general election. Plaintiffs are two such voters who were unable to vote on November 8, 2022, simply because Luzerne County did not order enough ballot paper. They bring this suit against Luzerne County and its election related agencies ("Defendants") not to challenge the election's results but vindicate their constitutional rights

---

[1] *In Re: Extension of Time of Polls to Remain Open in the 2022 General Election*, Luzerne County Court of Common Pleas, No. 09970 of 2022.

via declaratory and injunctive relief. Presently before the court is Defendants'
Motion to Dismiss (Doc. 13). For the reasons stated below that motion is
**DENIED** in part and **GRANTED** in part.

## I.   Background

The background of this case is taken from the factual allegations set
forth in Plaintiffs' complaint, (Doc. 13), which the court must accept as true
for the purposes of Defendants' motion to dismiss.

Luzerne is a county of the third class organized and existing under the
laws of the Commonwealth of Pennsylvania. Counties like Luzerne are
responsible for running elections in compliance with state and federal law.
The Luzerne County Board of Elections and Registration ("Board") oversees
elections, and the Luzerne County Bureau of Elections ("Bureau")
administers elections on behalf of the Board. In Luzerne County voters make
their choices on electronic voting machines but once they are done those
machines print out their ballots on sheets of paper, which are placed in ballot
boxes and tabulated.

However, in November 2022 Defendants did not order enough ballot
paper for all eligible voters in Luzerne County, who wished to vote, to actually
vote. As a result, at least 40 out of approximately 170 polling places across
the county ran out of the paper necessary to print, cast, and tabulate voters'

ballots. These shortfalls were not the product of unpredictably high turnout, as evidenced by the fact that some polling places ran out of paper within an hour of opening. In fact, Defendants were warned ahead of time about possible ballot paper shortages.

Still Defendants had no plan in place for when paper began to run out. Instead, individual polling places were left to fend for themselves without any guidance or assistance from Defendants. In some locations election workers were instructed to purchase paper at office supply stores. While at other locations, voters brought their own paper. Amid this chaos lines to vote grew and some election workers instructed otherwise qualified and registered voters to cast provisional ballots, which are typically used when a voter's qualifications cannot be determined and only counted after the Board adjudicates them on a case-by-case basis. Nonetheless in other instances, voters were turned away completely.

At Defendants request the Luzerne County Court of Common Pleas took the extraordinary step of allowing polls to remain open an extra two hours. However, this decision came after many voters had already cast provisional ballots or been turned away. Plaintiffs are two such voters. On the morning of election day Plaintiff William French went to vote at his local polling place in Freeland but was told upon arrival there was not enough

paper for him to vote and to return later. French returned that afternoon but was told for second time to come back later. French, who is disabled and uses a cane, feared walking at night so he could not return that evening and in turn did not have an opportunity to vote.

On the morning of election day Plaintiff Melynda Anne Reese and her ill husband also went to vote at their local polling place in Shickshinny. Upon arriving Reese was told there was only enough paper for her husband to vote and that she would have to return later. Reese did return that afternoon and again that evening but faced significant lines both times. Due to his illness Reese's husband could not wait in line with her nor could she leave him alone. So, she did not vote. At 9:15 pm, an election official phoned Reese to inform her that ballots were now available. However, Reese's husband had already taken sleeping medication, so they were not able to return to the polls for a fourth time and in turn Reese also did not have the opportunity to vote.

Despite the issues on election day, the Board certified Luzerne County's election results by a vote of 3 to 2. Plaintiffs thereafter brought this suit not to overturn the results of the election but vindicate their rights to vote, which they allege were violated by *inter alia* Defendants' failure to order enough ballot paper. Defendants acknowledge that they failed the voters of

Luzerne County on November 8, 2022, but argue that they did not violate Plaintiffs' constitutional rights and accordingly filed his motion to dismiss. The motion has been fully briefed and is ripe for decision.

## II. Legal Standard

### A. Motion to Dismiss

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Under the pleading regime established by [*Bell Atl. Corp. v.*] *Twombly*, 550 U.S. 544 (2007) and *Iqbal*, a court reviewing the

sufficiency of a complaint must take three steps. First, it must

"tak[e] note of the elements [the] plaintiff must plead to state a

claim." *Iqbal*, 556 U.S. at 675. Second, it should identify

allegations that, "because they are no more than conclusions,

are not entitled to the assumption of truth." *Id*. at 679. Finally,

"[w]hen there are well-pleaded factual allegations, [the] court

should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id*. at 679.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787–88 (3d Cir. 2016) (internal

citations, quotations and footnote omitted). Elements are sufficiently alleged

when the facts in the complaint "show" that the plaintiff is entitled to relief.

*Iqbal*, 556 U.S. at 679 (quoting FED.R.CIV.P. 8(a)(2)). At the second step,

the court distinguishes between legal conclusions, which are discounted in

the analysis, and allegations of historical fact, which are assumed to be true

even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful."

*Iqbal*, 556 U.S. at 681. Deciding whether a claim is plausible is a "context-

specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id*.

### B. 42 U.S.C. §1983

42 U.S.C. §1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. To state a cause of action under §1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005).

Nevertheless, local government entities can be held liable under §1983 only if Plaintiffs show that the violation of their federally protected rights resulted from the enforcement of a "policy" or "custom" of Defendants. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, (1986)).

It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139 (1988). "A course of conduct is

considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

It is undisputed that Defendants are state actors for the purposes of §1983. Thus, the issue here is whether Plaintiffs plausibly plead a violation of their constitution rights as a result of Defendants' policies and practices.

### III.   Discussion

### A. Proper Parties

Since Defendant Luzerne County Bureau of Elections is a department within Luzerne County government and not a sperate legal entity a claim against both the County and the Bureau would be redundant. Accordingly, the court will dismiss the Bureau from the case.

### B. Count I - Violation of the First and Fourteenth Amendments Right to Vote - Inadequate Supplies

Defendants do not dispute that they failed to provide adequate supplies during the 2022 general election, but they do claim that this failure was not deliberate. Moreover, they assert that Plaintiffs' right to vote was not outright

denied because Plaintiffs could have voted if not for their own or spouse's health. Accordingly, Defendants argue that Plaintiffs have failed to state a plausible claim. The court disagrees.

"Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections and to have their votes counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (internal citation omitted). The right to vote can be denied outright or where the government imposes substantial burdens on the right to vote. *See, Storer v. Brown*, 415 U.S. 724, 729-730 (1974); *see also Burdick v. Takushi, 504 U.S. 428, 433 (1992)* ("Because "voting is of the most fundamental significance under our constitutional structure," a state actor can violate the right to vote by placing significant burdens on the exercise of the right.) (internal citation omitted).

Here Plaintiffs plausibly plead that Defendants made affirmative directives, decisions, and decrees (*i.e.*, had a policy) to order an insufficient number of ballots.[2] As a result of that policy Plaintiffs were both initially outright denied the right to vote and told to come back later, did come back

---

[2] Defendants claim the issue on November 8, 2022, was a "general paper supply issue" and not an individual balloting problem because ballots were technically cast using an electronic vote machine. But the shortage of paper still meant that the voting machines could not print out voters' ballots. So effectively Defendants failed to supply enough ballots.

later, and were still faced with substantial burdens that further prevented them from voting. Defendants claim that Plaintiffs fail to allege that the ballot shortage could have only occurred due to Defendants' policy, but Defendants fail to offer any alternative explanation. For example, Defendants do not argue that they ordered enough ballots, and that number was not delivered. If discovery reveals that this was the case, then Defendants could prevail at summary judgment. But for now, merely claiming to not have deliberately ordered insufficient ballots does not defeat Plaintiffs' claim.

Furthermore, ill health does not undermine a person's constitutional rights. While the health of French and Reese's spouse may have made the burden placed on their rights to vote more substantial, it does not change the fact that Defendants still burdened their rights to vote. If Defendants had ordered enough ballots Plaintiffs or their spouse's health would not have prevented them from voting. Thus, there is a direct causal link between the identified policy and the alleged violation. Since Defendants have not otherwise shown Plaintiffs failed to adequately plead this claim, their motion to dismiss Count I will be denied.

## C. Count II - Violation of the First and Fourteenth Amendments - Failure to Train

Defendant[3] argues that Plaintiffs cannot assert a failure to train claim because they do not allege a pattern of violations. It is true that if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted). Such a failure [to train or supervise municipal employees] "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

However, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under §1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 64, (2011) *See also Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) citing *Canton*, 489 U.S. at 390. (A plaintiff may also show deliberate indifference by presenting evidence "that in light of the duties

---

[3] Defendant Luzerne County Board of Elections and Registration is not authorized to hire or train Luzerne County election personnel. Accordingly, Defendant Luzerne County is the only proper Defendant for Count II.

assigned to [the relevant employees,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.")

The unconstitutional consequences of failing to give guidance let alone train election workers on how to manage ballot shortages is so patently obviously that the Plaintiffs here need not plead a pattern of pre-existing violations. Even if the failures on November 8, 2022, were an isolated incident, those failures were so acute that the training (or lack thereof) election workers received was so obviously inadequate that Defendant could reasonably be said to have been deliberately indifferent to Plaintiffs' rights to vote. Regardless Plaintiffs have also pled a deeply concerning pattern of voting rights violations in Luzerne County including but not limited to an election worker throwing away voters' ballots and voting machines printing ballots with errors.

Defendant claims that these issues are distinct from those that occurred on November 8, 2022, but that is a question of fact not appropriate for consideration on a motion to dismiss. Moreover, Defendant seemingly claims that its one success in detecting voter fraud, which like ordering enough ballot paper is the bare minimum expected for an election authority,

forgives its multitude of other failures. Defendant is wrong and its motion to dismiss Count II will be denied.

### D. Count III - Violation of the Fourteenth Amendment - Equal Protection

Defendants argue that Plaintiffs fail to plead an equal protection violation because they do not challenge any state law or regulation or any policy or procedure of Defendants. Moreover, Defendants argue that Plaintiffs fail to allege they are part of protected class.

The Fourteenth Amendment to the United States Constitution states, in relevant part that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Consti. Amend. XIV, §1; *See also Donald J. Trump for President, Inc., v. Boockvar*, 502 F. Supp. 3d 899, 917–18. ("The principle of equal protection is fundamental to our legal system because, at its core, it protects the People from arbitrary discrimination at the hands of the State.") "In decision after decision, [the Supreme Court] has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336, (1972).

Contrary to Defendants' assertions Plaintiffs do identify a policy of the Defendants, *i.e.*, not ordering enough ballot paper, that had an

unconstitutional affect.  Plaintiffs do not allege this policy diluted their votes. Instead, they allege that by allocating an inadequate amount of paper to 40 of approximately 170 polling places, including both of Plaintiffs' polling locations, Defendants subjected Plaintiffs' ability to vote to a different standard from other voters based solely on where they lived.

Defendants are correct that geography is not a protected class, but multiple courts have found unequal treatment of ballots based on where voters live unconstitutional. *See Bush v. Gore*, 531 U.S. 98, 106 (2000) (holding equal protection violation occurred because "the standards for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county from one recount team to another."); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) (holding that allegations voters were forced to wait from two to twelve hours to vote because of inadequate allocation of voting machines could establish an equal protection claim that voters right to vote was denied or severely burdened based on where the voter lived.); *Pierce v. Allegheny County Board of Election*s, 324 F.Supp. 684 (W.D. Pa. 2003) (holding that an equal protection claim was pleaded where plaintiff alleged that counties applied different standards to the counting of absentee ballots delivered by third parties.).

- 14 -

Just earlier this year the Western District of Pennsylvania denied a motion to dismiss an equal protection challenge to Pennsylvania's rules for counting absentee ballots. *See Pennsylvania State Conference of the NAACP v. Schmidt*, 2023 WL 3902954 (W.D. Pa. June 8, 2023). Defendants try to distinguish this case based on the fact it dealt with the specific issue of counting ballots whereas here the issue was availability of ballots. The court does not see this distinction. Plaintiffs' ballots were not counted because Defendants did not make available an adequate number of ballots. Had Plaintiffs lived in a voting precinct with adequate paper they would have cast a ballot that would have been counted.

While most equal protection cases address disparate treatment of voters among, not within counties, a case not cited by Plaintiffs but key to the finding in *League of Women Voters*, found that a village's failure to provide adequate voting facilities to all voters, deprived some voters of the equal protection of law. *See Ury v. Santee*, 303 F. Supp. 119, 126 (N.D. Ill. 1969). In *Ury* substantially more voters were assigned to certain precincts than others, but each precinct had the same number of election judges. As a result, voters assigned to precincts with more voters had to wait in substantially longer lines than voters assigned to precincts with less voters.

On this basis the court found an equal protection violation and eventually invalidated the results of the contested election.

Plaintiffs here are not seeking to overturn election results, but their case is analogous to *Ury*. Voters at precincts with less paper faced more substantial burdens on their right to vote than voters at precincts with more paper. Defendants offer no explanation for this discrepancy. They only offer assurances that the events of November 8, 2022, were a "freak accident" and that there was no nefarious motive behind the inequitable allocation of paper. The court is not convinced at this stage of the litigation. As a result, Defendant's motion to dismiss Count III will be denied.

### E. Count IV - Violation of Fourteenth Amendment - Procedural Due Process

Defendants argue that Plaintiffs' due process claim fails because the Fourteenth Amendment does not guarantee against errors in election administration. In making their arguments both parties blur the lines between substantive and procedural due process but ultimately Plaintiffs do acknowledge that they are only making a procedural due process claim. Accordingly, the court will only consider arguments that pertain specifically to procedural due process.

To state a claim under §1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006).

Neither the Supreme Court, nor the Third Circuit have deemed the right to vote a liberty interest under the Fourteenth Amendment. Plaintiffs cite a footnote in a Fourth Circuit case (about municipal land annexation) to support the position that the right to vote is a liberty interest. *See Barefoot v. City of Wilmington, N. Carolina*, 37 F. App'x 626, 635, n. 5 (4th Cir. 2002). They further cite *League of Women Voters* for the additional proposition that inadequate allocations of voting machines and long wait times indicate due process violations. 548 F. 3d at 477-78. However, *League of Women Voters* also found "that Ohio's voting system impinges on the fundamental right to vote does not, however, implicate procedural due process" because the right is not a protected liberty interest. *Id.* at 479.

Whereas elsewhere the court finds this case analogous to *League of Women Voters*, under which Plaintiffs have not adequately pled that such an infringement implicates procedural due process. Since Plaintiffs only plead

a claim for procedural not substantive due process, the court will grant Defendants' motion to dismiss Count IV.

## IV.    Conclusion

For the foregoing reasons Defendant Luzerne County Bureau of Election will be dismissed from this case, Defendant Luzerne County Board of Elections and Registration will be Dismissed from Court II, Defendants' Motion to Dismiss (Doc. 13) Counts I, II, and III will be **DENIED**, and Defendants Motion to Dismiss (Doc. 13) Count IV will be **GRANTED**. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 4, 2023**
23-0538-01

- 18 -